IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MATTHEW DAVID SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 6:16-cv-323-RP-JCM |
| | § | |
| CITY OF KILLEEN, TEXAS; and | § | |
| GIVONCHIE EMEANA, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is the Report and Recommendation of United States Magistrate Judge Jeffrey C. Manske, (Dkt. 28), concerning the Motions for Summary Judgment filed by Defendants City of Killeen, Texas ("the City"), and Givonchie Emeana ("Emeana") (collectively, "Defendants"). (Dkts. 17, 18). Also before the Court are Plaintiff Matthew David Smith's ("Smith") timely filed objections. (Dkt. 29).

This case was referred to United States Magistrate Judge Jeffrey C. Manske for a report and recommendation on the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

In his report and recommendation, Judge Manske recommended that the Court grant Defendants' motions. (R. & R., Dkt. 28, at 23–24). Having considered the parties' submissions, the record, and the applicable law, the Court will not fully adopt the report and recommendation.

## I. BACKGROUND

This case concerns a man who was shot by a police officer while fleeing a traffic stop. (R. & R., Dkt. 28, at 1–2). There is no dispute about the basic facts. Just after 5 a.m. on August 16, 2014,

Emeana pulled over Smith for running a red light in Killeen, Texas. (*Id.* at 1). Smith fled in his car, and Emeana chased Smith until both cars arrived at a dead end. (Compl., Dkt. 1, at 2–3; Emeana Mot. Summ. J., Dkt. 17, at 3–4). Emeana got out of his car and approached Smith's; seconds later, Emeana fired eight bullets into Smith's car. (Compl., Dkt. 1, at 3; Emeana Mot. Summ. J., Dkt. 17, at 5). Smith says one of the bullets struck him in the neck. (Compl., Dkt. 1, at 3).

The dispute in this case concerns Emeana's liability for Smith's injury. Emeana says that he only shot at Smith's car because Smith was driving his car at Emeana. (Emeana Mot. Summ. J., Dkt. 17, at 6). Smith says that his car was stopped and he had his hands up when Emeana fired the first shot at him and that Emeana moved into the path of Smith's car while shooting at him. (Resp. Emeana Mot. Summ. J., Dkt. 19, at 3).

Smith asserts causes of action under 42 U.S.C. § 1983 ("Section 1983") against Emeana for violating Smith's Fourth Amendment right to be free of excessive force and his Fourteenth Amendment right to substantive due process. (Compl., Dkt. 1, at 5–6). He also asserts a state-law cause of action for assault against Emeana. (*Id.* at 6). Against the City, Smith asserts a cause of action under Section 1983 for violating his Fourth Amendment right to be free of excessive force by failing to properly train or supervise Emeana. (*Id.* at 6–8). Emeana asserts qualified immunity as a defense to Smith's Section 1983 claims. (Emeana Answer, Dkt. 4, at 8).

In his report and recommendation, Magistrate Judge Manske found that neither Emeana nor the City was liable as a matter of law for any of Smith's claims and recommended that the Court grant summary judgment in favor of Emeana and the City on all claims. (R. & R., Dkt. 28, at 23–24). Smith then timely filed objections to every part of the report and recommendation. (Obj., Dkt. 29).

## II. LEGAL STANDARDS

### A. Federal Magistrates Act

Under federal statute and the Federal Rules of Civil Procedure, magistrate judges may make findings and recommendations on dispositive motions. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). Motions for summary judgment are dispositive motions under the Federal Magistrates Act. *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 763 (5th Cir. 2016) (citing 28 U.S.C. § 636(b)(1)(A)). For dispositive motions, parties are entitled to *de novo* review of any part of the magistrate judge's disposition that has been properly objected to. Fed. R. Civ. P. 72(b)(3).

### B. Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.*

Even when considering a qualified immunity defense, however, the Court must view the evidence in the light most favorable to the non-movant and draw all inferences in the non-movant's favor, *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). That said, when one party's version of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. SUMMARY JUDGMENT EVIDENCE

Viewed in the light most favorable to Smith, the summary judgment evidence is as follows. After being stopped by Emeana, Smith fled in his car and Emeana followed him. (Smith Decl., Dkt. 19-1, at 2.). The chase began just after 5 a.m. and very few cars or pedestrians were on or near the road. (Emeana Video, Ex. D-1, Dkt. 17, at 1:20–10:24). Smith states that he "did not run any red lights" and "did not greatly or unsafely exceed the speed limit" during the chase. (Smith Decl., Dkt. 19-1, at 2).[1] During the ten-minute chase, Smith ran a number of stop signs, but also slowed or stopped for many others; he several times failed to signal a turn or signaled the wrong direction, but he often signaled turns properly; he drove for several seconds on the wrong side of the road and off the road, but mostly drove in the correct lane. (Emeana Video, Ex. D-1, Dkt. 17, at 1:20–10:24). Smith did not collide with any cars or other objects and avoided colliding with Emeana's car. (*Id.*).

---

[1] The video of the chase taken by Emeana's dashboard camera does not blatantly contradict either statement such that a reasonable jury could not believe them. *Scott*, 550 U.S. at 380.

Eventually, Smith stopped his car in a cul-de-sac and Emeana pulled up along the driver side of Smith's car. (*Id.* at 10:24; Smith Decl., Dkt. 19-1, at 2). A second police car driven by Officer Ronald Jackson ("Jackson") pulled up behind Smith's car. (Jackson Pursuit Video, Ex. D-2, Dkt. 17, at 9:58). Smith then drove in reverse and started a three-point turn toward his passenger side and away from Emeana's car to leave the cul-de-sac. (*Id.* at 10:00). As Smith reversed his car, Emeana exited his car and rushed toward Smith's driver's side window with his gun pointed at Smith's car. (*Id.* at 10:01–03).

What happened next is the core of the dispute. According to Smith, Emeana banged on Smith's car window with his gun. (Smith Decl., Dkt. 19-1, at 3). Then, after his reverse turn had come to rest, he saw Emeana "standing with his gun pointed" at him from several feet to the left and away from Smith's car. (*Id.*). Smith is "certain" that he put his hands in the air and that his car was not moving when Emeana fired the first shot at him. (*Id.*). Emeana was "off to the left" of his car and not in the path of his car. (*Id.*). Emeana then "ran across the front" of Smith's car and fired several more shots while running. (*Id.*).

According to Emeana, however, he began firing at Smith's car as it "turned towards [him] in close proximity to [him] and then drove towards [him]." (Emeana Decl., Dkt. 17, at 41). He was in front of Smith's car when he fired his first five shots at the car and he had to take "evasive action" to avoid being hit by Smith's car, (*id.*), which was moving when he fired each of his first five shots. (Emeana Reply, Dkt. 20, at 1).

Neither Emeana's nor Jackson's car dash camera recorded video footage of Smith's car or Emeana when Emeana fired at Smith's car. However, another camera captured footage of some of the gunshots. On the north side of the cul-de-sac sits a house with a home security camera. (Home Security Video, Ex. D-3, Dkt. 17). The angle of that camera allowed it to view all three cars entering the cul-de-sac, (*id.* at 0:11), but not any of the cars while they were inside the cul-de-sac, (*id.* at 0:18).

5

Before the first shot was fired, the camera recorded headlights washing across the driveway. (*Id.* at 0:29). A split second after the moving headlights are visible in the video footage, the first gunshot is audible. (*Id.* at 0:30). In the video, the first gunshot is followed quickly by four more; neither Smith's car nor Emeana are visible when the first three gunshots can be heard. (*Id.* at 0:31). When both come into view, Emeana appears to be in front of Smith's car and moving laterally from driver side to passenger side as he fires the fourth and fifth shots. (*Id.* at 0:32). The video then shows Emeana firing three more gunshots at the car from a position behind the car and off to the passenger side. (*Id.* at 0:34).

Smith does not know which of the eight bullets struck him in the neck. (Smith Decl., Dkt. 19-1, at 3). A shooting reconstruction report ("SRR") prepared by the Killeen Police Department concluded that the first bullet fired was likely the bullet that struck Smith. (SRR, Dkt. 19-2, at 27). A photograph of Smith taken shortly after the shooting shows blood covering the front of his chest and an emergency responder placing pressure on the front Smith's throat but does not show an entry or exit wound. (Photograph, Dkt. 17, at 64).

## IV. DISCUSSION

Because Smith timely objected to every part of the magistrate judge's report and recommendations, he is entitled to *de novo* review of the entire report and recommendation. The Court will consider each of Smith's claims separately.

*A. Section 1983 – Fourth Amendment*

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified immunity, a court must decide both (1) whether a plaintiff has alleged facts sufficient to establish a constitutional violation and (2) whether

6

the right at issue was clearly established at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court has discretion to determine the order in which it considers those questions. *Id.* at 236. Here, the Court will first consider whether Smith has adequately alleged a constitutional violation.

### 1. The Constitutional Violation

To prevail on an excessive-force claim, a plaintiff must show: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation and quotation marks omitted). The Fifth Circuit recognizes that the analyses of whether a use of force is "clearly excessive" or "clearly unreasonable . . . are often intertwined." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). There is no question that Smith was injured; the question is whether Emeana's use of force was clearly excessive or unreasonable.

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Factors to consider include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396).

The reasonableness of an officer's conduct is judged objectively without reference to the officer's intent or motivation. *Graham*, 490 U.S. at 397. Courts must look at the facts and circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Courts must also account for the difficult and often split-second decisions that police officers must make in carrying out their duties. *Id.* at 396–97.

7

The Fifth Circuit has emphasized that determining "the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury." *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 411 (5th Cir. 2009). "When facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably," a court "can hold that an officer acted reasonably as a matter of law." *Id.* at 412. However, "when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences," a court "must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff." *Id.* If a rational factfinder could conclude that Emeana violated the Constitution, the Court must move on to the qualified immunity question. *Id.*

Emeana argues that his use of force was justified both because Smith drove his car at him and because Smith's flight put the officers and public at risk. (Emeana Mot. Summ. J., Dkt. 17, at 7–9). The magistrate judge agreed, (R. & R., Dkt. 28, at 9–21), but Smith objects that the report and recommendation makes factual determinations with which a reasonable juror could disagree, (Obj., Dkt. 29, at 2–6).

The Court agrees with much of the magistrate judge's analysis. The home security camera footage conclusively establishes that Smith's car was moving before Emeana fired his first shot. (*See* R. & R., Dkt. 28, at 14; Home Security Video, Ex. D-3, Dkt. 17, at 0:29–31 (showing Smith's headlights sweeping across the home's driveway before a gunshot is audible)). The home security camera footage so "blatantly contradict[s]" Smith's statement that his car was still when Emeana first shot at him, (Smith Decl., Dkt. 19-1 at 3), that a reasonable juror could not believe it. *Scott*, 550 U.S. at 380. The home security footage therefore eliminates any genuine dispute concerning Smith's argument that his car was motionless when the first shot was fired and that Emeana's actions were therefore unreasonable. (Resp. Emeana Mot. Summ. J., Dkt. 20, at 9).

8

Moreover, the SRR—Smith's own evidence—establishes that none of the last three shots caused Smith's injuries. Emeana fired his second volley of three shots into the passenger side of Smith's car as it passed him. (Home Security Video, Ex. D-3, Dkt. 17, at 0:34). The SRR documents the trajectories of those three bullets: one exited the driver's side door, one was lodged in the passenger seat, and the third sliced laterally through the rear of the driver's side headrest. (SRR, Dkt. 19-2, at 24–26). Smith's own evidence therefore supports the finding that none of these bullets struck him. And while Smith argues that "Emeana offers no evidence . . . that would rule out any of the eight projectiles causing the injury," it is Smith who has the burden of creating a genuine fact issue as to whether Emeana's conduct violated the Fourth Amendment. *Brown*, 623 F.3d at 253. Because a use of force only violates the Fourth Amendment if it causes an injury, *Cooper*, 844 F.3d at 522, none of those three shots can form the basis of Smith's Fourth Amendment claim.

Accordingly, there is one remaining issue concerning Emeana's conduct: whether he unreasonably created the threat justifying his use of force. (Resp. Emeana Mot. Summ. J., Dkt. 20, at 12–13). On this issue, the Court disagrees with the report and recommendation. (R. & R., Dkt. 28, at 15–16). Smith states that Emeana was "off to the left" of his car and "not in the path" of his car before it began moving, and that Emeana "ran across the front of the car" as he fired his gun. (Smith Decl., Dkt. 19-1, at 3). Viewing the evidence in the light most favorable to Smith, Emeana was not in the path of Smith's car until he placed himself in the path of the car. There is no video footage that conclusively resolves that factual contention against Smith; neither the dash camera video footage nor the home security video footage shows the path of Smith's car or Emeana's position relative to Smith's car as Smith begins to exit the cul-de-sac. Although Emeana disputes Smith's version of events, (Emeana Decl., Dkt. 17, at 42), the Court cannot make credibility determinations or weigh the evidence at this stage. *Reeves*, 530 U.S. at 150.

9

Moreover, this fact dispute is material. The Fifth Circuit and other federal courts of appeal have held that an officer's use of force cannot be justified by the threat of an oncoming vehicle when the officer moves into a vehicle's path. *Edmond v. City of New Orleans*, 20 F.3d 1170, 1170 (5th Cir. 1994) (precedential under 5th Cir. R. 47.5.3) (holding that "[s]ummary judgment is properly denied" when "fact issues existed about whether a police officer's use of force was justified or was unreasonably created when he stepped in front of a moving car.") (citation omitted); *Kirby v. Duva*, 530 F.3d 475, 482 (6th Cir. 2008) (affirming the denial of summary judgment where some evidence suggested that the officer placed himself in danger by moving toward the plaintiff's car and stating that "[w]here a police officer unreasonably places himself in harm's way, his use of deadly force may be deemed excessive."); *Estate of Starks v. Enyart*, 5 F.3d 230, 233–35 (7th Cir. 1993) (rejecting a district court's grant of summary judgment where a fact dispute existed as to whether the officer stepped in front of the decedent's car before shooting him). Should a jury find that (a) Emeana was not in the path of Smith's car before he fired and that (b) a reasonable officer in Emeana's position would not have felt threatened by Smith's car until he placed himself in the car's path,[2] it could find that Emeana's use of force was unreasonable or excessive. The evidence is sufficient to permit a jury to make that determination.

Emeana also argues that his use of force was justified by Smith's flight. (Emeana Mot. Summ. J., Dkt. 17, at 9–10). According to Emeana, during the 10-minute chase, Smith:

---

[2] At least one federal appellate court has held that an officer is entitled to qualified immunity when a suspect is driving in the officer's "general direction" and the officer "could have been run over in about one second" if the suspect "turned slightly" toward the officer. *Waterman v. Batton*, 393 F.3d 471, 479 (4th Cir. 2005). In *Waterman*, the suspect was driving at 11 to 15 miles per hour toward three officers located 16 to 72 feet from the car. *Id.* at 474–75. Noting that the officers were faced with a "split-second decision" involving a suspect who had "just minutes" earlier reportedly tried to run another officer off the road, the Fourth Circuit held as a matter of law that a reasonable officer could have believed that the suspect posed a sufficient threat of physical harm to warrant qualified immunity. *Id.* at 480.

Taken in the light most favorable to Smith, the facts in this case are distinguishable. First, Smith had not "used his vehicle as a weapon against another officer just moments before." *Id.* In fact, he had avoided running his car into Emeana and Jackson's cars. (Emeana Video, Ex. D-1, Dkt. 17, at 5:10–5:15). Second, Smith was driving at a slower speed and the evidence creates a fact dispute concerning Emeana's position relative to the path of Smith's car. (See Smith Decl., Dkt. 19-1, at 3).

> disregarded stop signs; blew through intersections; drove dangerously; drove down the wrong side of the road, almost hit a turning vehicle, continued to run despite being pursued by units with lights and sirens; drove through a yard and lot; was cornered once in a *cul-de-sac* and turned and sped out, narrowly missing Officer Emeana's patrol vehicle; and once cornered in the next *cul-de-sac*, where the use of force occurred, refused to give up.

(*Id.* at 9). Emeana states that Smith put the "public and officers at extreme risk" by committing the felony of evading arrest in a motor vehicle and "going to extreme lengths not to be captured." (*Id.*).

But there is also evidence mitigating the dangerousness of Smith's flight. As discussed above, the chase took place just after five a.m. and very few cars or pedestrians were on or near the road. (Emeana Video, Ex. D-1, Dkt. 17, at 1:20–10:24). Smith states that he "did not run any red lights" and "did not greatly or unsafely exceed the speed limit" during the chase. (Smith Decl., Dkt. 19-1, at 2). Smith does, at times, appear to obey traffic laws. (Emeana Video, Ex. D-1, Dkt. 17, at 1:20–10:24). Smith did not collide with any cars or other objects and avoided colliding with Emeana's car. (*Id.*).

Even if a suspect flees by car, the Supreme Court has not "declare[d] open season on suspects fleeing in motor vehicles." *Lytle*, 560 F.3d at 414. As the Supreme Court has recognized, federal appellate courts have repeatedly held it to be unreasonable to shoot "suspects who may have done little more than flee at relatively low speeds." *Mullenix v. Luna*, 136 S.Ct. 305, 312 (2015) (citing *Walker v. Davis*, 649 F.3d 502, 503 (6th Cir. 2011); *Kirby*, 530 F.3d at 479–80; *Adams v. Speers*, 473 F.3d 989, 991 (9th Cir. 2007); and *Vaughan v. Cox*, 343 F.3d 1323, 1330–31, and n.7 (11th Cir. 2003)). In *Lytle*, the Fifth Circuit held that a jury could find the use of deadly force to be unreasonable when the plaintiff had fled for half a mile through a residential area and collided with another car. *Lytle*, 560 F.3d at 416–17.

Taken in the light most favorable to Smith, the evidence of his flight is such that a reasonable jury could conclude that it was unreasonable to use deadly force to seize him. A reasonable jury could decide that this case does not involve "a Hollywood-style car chase of the most frightening sort," *Scott*, 550 U.S. at 380, but rather a brief pursuit "at relatively low speeds." *Mullenix*, 136 S. Ct. at 312. A reasonable jury could also find in Emeana's favor, but as in *Lytle*, the evidence is such that the Court cannot take that determination away from a jury. *See Lytle*, 560 F.3d at 416–17 (holding that while a jury could decide that the officer's conduct was either reasonable or not, the plaintiff's driving was not "so menacing" that "any use of force in an attempt to stop it would be objectively reasonable as a matter of law").

## 2. Clearly Established Right

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231 (citation and quotation marks omitted). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). While there needs not be "a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011)).

The Supreme Court has instructed courts "not to define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308. In doing so, the Supreme Court explicitly rejected the rule from *Tennessee v. Garner*, 471 U.S. 1, 11 (1985), that a police officer may not "use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Mullenix*, 136 S. Ct. at 308–09 (citation and quotation marks omitted). Instead, the Supreme Court directed courts to determine "whether the violative nature of particular conduct is clearly established

. . . in light of the specific context of the case," rather than "as a broad general proposition." *Id.* at 308 (citations and quotation marks omitted). In deciding these motions for summary judgment, the Court must determine whether Emeana's actions violated clearly established law when viewing Smith's evidence in the light most favorable to him and drawing reasonable inferences in his favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014). While a court "may look to other circuits to find clearly established law," it must "consider the overall weight of such authority." *Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) (citation and quotation marks omitted). A court must also consider "whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002); *see also id.* at 332 (rejecting the application of a doctrine recognized in six other circuits because the doctrine was recognized at a "general level" that did not provide the officer with "notice" that the doctrine applied to him). The fundamental question, then is whether—viewing the evidence in the light most favorable to Smith—Emeana would have had "fair notice" that his actions were unreasonable. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).

Because Emeana argues that his use of force was justified both by Smith driving his car at him and by Smith's flight, (Emeana Mot. Summ. J., Dkt. 17, at 7–9), the Court must consider whether clearly established law would have notified Emeana that his actions were unreasonable under either justification.

The Fifth Circuit has stated explicitly that an officer's use of force cannot be justified by moving into the path of a suspect's car. *Edmond*, 20 F.3d at 1170 (holding that "[s]ummary judgment is properly denied" when "fact issues existed about whether a police officer's use of force was justified or was unreasonably created when he stepped in front of a moving car.") (citation omitted). Other circuits have announced the same rule. *Kirby*, 530 F.3d at 482 (stating, in a case where some evidence suggested that the officer placed himself in danger by moving toward the plaintiff's car,

13

that "[w]here a police officer unreasonably places himself in harm's way, his use of deadly force may be deemed excessive."); *Estate of Starks*, 5 F.3d at 234 (stating that if the officer had "stepped in front of [the plaintiff's] rapidly moving cab. . . then [the officer] would have unreasonably created the encounter that ostensibly permitted the use of deadly force to protect him"). These cases suffice to give a reasonable officer fair notice that it would be unreasonable to shoot a suspect in an oncoming car if the officer moved into the car's path.

Second, the law is clearly established that officers cannot use deadly force simply to seize a suspect who has done "little more than flee at relatively low speeds." *Mullenix*, 136 S. Ct. at 312 (citing *Walker*, 649 F.3d at 503; *Kirby*, 530 F.3d at 479–80; *Adams*, 473 F.3d at 991; and *Vaughan*, 343 F.3d at 1330–31, 1330 n.7). In *Walker*, a motorcycle driver refused to pull over for a traffic stop and fled for five minutes. 649 F.3d at 503. The chase took place "on empty stretches of highway" at speeds never above 60 miles per hour. *Id.* The driver ran a red light and ultimately drove off-road across a field before the police took action that killed him. *Id.* In *Adams*, a driver refused to pull over for a traffic stop and fled for 90 minutes. 473 F.3d at 991. The driver "drove largely within the speed limit" but "nonchalant[ty]" in the manner of a "rapid Sunday drive." *Id.* He stopped at some stop signs and rolled through others. *Id.* He continued to flee even after police repeatedly tried to ram him off the road. *Id.* In *Vaughan*, a police officer shot a passenger in a fleeing vehicle after the driver had led police on a highway chase exceeding eighty miles per hour and had collided with a police cruiser. 343 F.3d at 1326–27. In each case, the circuit court held that the law was clearly established that the officer's use of force—under the plaintiff's version of the facts—was not entitled to qualified immunity. *Walker*, 649 F.3d at 504; *Adams*, 473 F.3d at 994; *Vaughan*, 343 F.3d at 1333.

These cases are joined by others. In *Lytle*, the Fifth Circuit held that an officer was not entitled to qualified immunity at the summary judgment stage when he shot and killed the passenger in a car that had fled for half a mile through a residential area at speeds over 65 miles per hour and

14

collided with another car. *Lytle*, 560 F.3d at 407–08, 416–17. In *Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009), the Tenth Circuit held that it was not reasonable as a matter of law for a police officer to shoot a fleeing driver who fled at speeds between 30 and 50 miles per hour, twice drove off the road, ran a red light, and drove on the wrong side of the highway. 569 F.3d at 1186–87, 1193. In *U.S. v. Bradley*, 196 F.3d 762 (7th Cir. 1999), the Seventh Circuit upheld the conviction of a police officer for willfully using excessive force when he shot into a car that had been fleeing at speeds of 25 miles per hour. 196 F.3d at 765, 767, 772.

Emeana points out that in *Mullenix*, the Court noted that it has "never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity." (Emeana Mot. Summ. J., Dkt. 17, at 18 (citing *Mullenix*, 136 S. Ct. at 310 (citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2021–22 (2014) (holding that an officer acted reasonably in shooting a suspect who fled at speeds exceeding 100 mph, forced several cars to change course, and ultimately collided with a police car); *Scott*, 550 U.S. at 375, 379–80 (holding that an officer acted reasonably in shooting a suspect that raced down two-lane roads at over 85 mph, swerved around over a dozen cars, forced cars onto the shoulder, and ran multiple red lights))).[3] But as the *Mullenix* Court pointed out, "the mere fact that courts have approved deadly force in more extreme circumstances says little, if anything, about whether such force was reasonable in the circumstances here." *Mullenix*, 136 S. Ct. at 312.

The more important question is whether federal appellate courts have denied qualified immunity in circumstances similar to those in this case with enough regularity to give Emeana notice that using deadly force would be unreasonable in the circumstances he faced on August 16, 2014.

---

[3] *Mullenix* involved a similarly dangerous high-speed chase: it lasted 18 minutes at speeds between 85 and 110 miles per hour, and a dispatcher had told the defendant officer that the suspect might be intoxicated and that he claimed to have a gun and threatened to shoot police officers. *Mullenix*, 136 S. Ct. at 306. Emeana would not, however, have been aware of the *Mullenix* decision at the time of the events in this case.

15

Viewing the evidence in the light most favorable to Smith and drawing reasonable inferences in his favor, a reasonable jury could find that he led police on a ten-minute low-speed chase in the middle of the night and drove around Emeana to continue fleeing when he was shot. Under those facts, Emeana would have used deadly force to seize a suspect who had done "little more than flee at relatively low speeds," *Mullenix*, 136 S. Ct. at 312, which (as the Supreme Court has recognized) federal courts of appeal have repeatedly held is not a justification that entitles the officer to qualified immunity.[4] These decisions suffice to give Emeana notice that using deadly force in such circumstances is unreasonable.

### B. Section 1983 – Fourteenth Amendment

The Court agrees with the magistrate judge that the Fourteenth Amendment does not grant citizens the right to be free from the excessive use of force by public officials. *Graham*, 490 U.S. at 395 ("Today we . . . hold that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). The Court therefore adopts the magistrate judge's recommendation that summary judgment be granted in favor of Emeana on Smith's Section 1983 claim for the violation of his Fourteenth Amendment rights. (R. & R., Dkt. 28, at 21).

---

[4] Some courts of appeal reach the same conclusion using a different analytical method, holding that when a suspect flees in a vehicle at low speeds and does not endanger police or the public, *Garner*'s rule remains sufficient to clearly establish that deadly force is not reasonable notwithstanding *Mullenix*'s requirement for a less general standard in dangerous high-speed chases. *See Lewis v. Charter Twp. of Flint*, 660 F. App'x 339, 347 (6th Cir. 2016) ("[W]here, as here, the facts viewed in the light most favorable to the plaintiff permit a finding that a reasonable officer would not have perceived *any* imminent threat to himself or others, the broader propositions of *Graham* and *Garner* suffice to clearly establish the right at issue."); *see also Smith v. Cupp*, 430 F.3d 766, 776–77 (6th Cir. 2005) (holding that it "is an obvious case where *Tennessee v. Garner* clearly establishes the law" when "the facts support a finding that a reasonable officer . . . would not have perceived danger to anyone at the scene").

*C. State Law Assault*

Smith also asserts that Emeana is liable for assault under Texas law. (Compl., Dkt. 1, at 6). Emeana argues that he is entitled to summary judgment because state law grants him absolute immunity. (Emeana Mot. Summ. J., Dkt. 17, at 20). Smith offers no response, (Resp. Emeana Mot. Summ. J., Dkt. 19), and the magistrate judge recommends dismissing the claim for lack of jurisdiction in light of his recommendation to dismiss all of Smith's federal-law claims. (R. & R., Dkt. 29, at 22–23). Smith objects to that portion of the report and recommendation because he disagrees that his federal claims should be dismissed. (Obj., Dkt. 29, at 13).

The Texas Tort Claims Act ("Act") provides the exclusive remedy for tort claims against the state, and it does not waive governmental immunity for assault claims. Tex. Civ. Prac. & Rem. Code § 101.057(2). Cities are governmental units under the Act. *Id.* § 101.001(3)(B). Under Section 101.106(f) of the Texas Civil Practices and Remedies Code, a suit against a government employee acting within the scope of employment is a suit against the employee in his official capacity. *See also Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011) ("[S]ection 101.106(f) . . . foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment."). Smith alleges that Emeana was acting within the course and scope of his employment at all relevant times in this case. (Compl., Dkt. 1, at 6). Because Smith's state-law assault claim is therefore asserted against the City of Killeen, which is immune from suit, this claim must be dismissed.

*D. Municipal Liability*

The City's Motion for Summary Judgment, (Dkt. 18), is based on the narrow argument that it is not liable to Smith because Emeana did not commit a constitutional violation based on the arguments asserted by Emeana in his motion, (*id.* at 2). The City explicitly reserved its argument that is entitled to summary judgment on other grounds. (*Id.* n.1). As discussed above, the Court does not

17

find that Emeana is entitled to summary judgment on Smith's Fourth Amendment Section 1983 claim. The City's motion is therefore denied on the same grounds.

## V. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Report and Recommendation of the United States Magistrate Judge, (Dkt. 28), is **ACCEPTED IN PART AND NOT ACCEPTED IN PART**.

Emeana's Motion for Summary Judgment, (Dkt. 17), is **GRANTED IN PART AND DENIED IN PART**. Emeana's motion is **GRANTED** with respect to Smith's Fourteenth Amendment claim and Smith's state-law assault claim, which are dismissed; it is **DENIED** in all other respects.

The City's Motion for Summary Judgment, (Dkt. 18), is **DENIED**.

**SIGNED** on March 8, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE